IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| CARLEY MCNEAL, | Civil Action No.  2:24-cv-00116 |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| FRAM RENEWABLE FUELS LLC., | |
| Defendant. | |

## COMPLAINT

COMES NOW, Carley McNeal ("Plaintiff" or "Ms. McNeal"), by and through her undersigned counsel, and files this, her Complaint, and shows the Court as follows:

## NATURE OF COMPLAINT

1.

Plaintiff brings this action for damages, and reasonable attorney fees against Defendant Fram Renewable Fuels LLC. ("Defendant") for violations of her rights under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12111 et seq. ("ADA"), Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, et. seq.

- 1 -

## JURISDICTION AND VENUE

### 2.

Plaintiff invokes the jurisdiction of this court pursuant to 28 U.S.C. §§ 1331, 29 U.S.C. § 2617, 42 U.S.C. § 2000e, 42 U.S.C. § 12117(a), and 28 U.S.C. §§ 1343.

### 3.

The unlawful employment practices alleged in this Complaint were committed within this district. In accordance with 28 U.S.C. § 1391, and 42 U.S.C. 12117(a), venue is appropriate in this Court.

## ADMINISTRATIVE PROCEDURES

### 4.

Plaintiff has fulfilled all conditions necessary to proceed with this cause of action under Title VII, and the ADA. Plaintiff filed her Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on February 1, 2024; the EEOC issued its Notice of Right to Sue on July 11, 2024.

### 5.

Plaintiff timely files this action within ninety (90) days of receipt of the Notice of Right to Sue from the EEOC.

## **PARTIES**

6.

Plaintiff is a citizen of the United States of America and is subject to the jurisdiction of this Court.

7.

At all times relevant, Defendant was qualified and licensed to do business in Georgia, and at all times material hereto has resided and/or conducted business within this District.

8.

At all such times, Plaintiff was an "employee" of Defendant as defined under the ADA at 42 U.S.C. § 12111(4).

9.

Plaintiff is an "eligible employee" within the meaning of the FMLA, 29 U.S.C. § 2601 *et seq*., in that had been employed with Defendant for more than 12 months and worked more than 1250 hours in the 12 months preceding her request for FMLA.

10.

During all times relevant hereto, Defendant had employed fifteen (15) or more employees for the requisite duration under Title VII and the ADA. Defendant is

therefore an "employer" as defined in Title VII and the ADA in accordance with 42 U.S.C. § 2000e(b) and 12111(5). During all times relevant hereto, Defendant has employed fifty or more employees, within a 75-mile radius of Plaintiff's employment, for the requisite requirements under the FMLA.

11.

Defendant may be served with process by delivering a copy of the summons and complaint to its Registered Agent, Harold Arnold, located at 19 Farmer Street, P.O Box 1810, Hazlehurst, GA, 31539, USA.

**FACTUAL ALLEGATIONS**

12.

Plaintiff began working for Defendant on or about March 7, 2022, as Accounts Payable employee.

13.

On or around July 27, 2022, due to her stellar performance, the Plaintiff received a performance-based raise.

14.

On or around February 10, 2023, the Plaintiff informed Accounting Manager, Natalie Miller and Office Manager, Stefanie Flint, she was pregnant with twins and

- 4 -

her pregnancy was considered high-risk. The Plaintiff was concerned due to having complications with her first pregnancy.

15.

On or around February 28, 2023, the Plaintiff was promoted to Inventory Accountant and received another raise. Her new supervisor was Jessica Carter.

16.

The Plaintiff kept her employer informed of her OB appointments, high- risk medical appointments and pregnancy-related health issues, including a shortened cervix diagnosis and a heart defect detected in one of the twins ("twin B").

17.

On July 18, 2023, Plaintiff had an appointment with her Obstetrician who informed her that she would not make it to the 37- week pregnancy mark due to her cervix length. She also directed her admit herself to the ER if she experienced any signs of labor.

18.

Plaintiff made Ms. Flint and New Inventory Accounting Supervisor, Jessica Carter aware of her condition. They replied that they wanted her to be comfortable and if she needed to work from home, that could be arranged.

19.

Plaintiff decided to continue to report on-site to work.

20.

The Plaintiff attended multiple appointments to ensure the health of her twins during her high-risk pregnancy.

21.

On July 28, 2023, Plaintiff reported to work, however she began to feel uncomfortable. She decided to go to the ER, and it was determined she was in preterm labor. She delivered the twins via emergency c-section.

22.

After her delivery, the Plaintiff contacted Ms. Carter. She informed her that HR representative, Chris Tanner did not contact her to begin the short-term disability process They advised her she was allowed 12 weeks of maternity leave and would assist her to begin maternity/short-term disability leave process.

23.

On July 31, 2023, Plaintiff texted Ms. Carter to have her short-term disability ("STD") paperwork process started.

24.

On August 12, 2023, Plaintiff was prescribed Zoloft for her severe post-partum depression and PTSD.

25.

On August 25, 2023, Plaintiff contacted Ms. Carter about the status of her STD, as it had not started.

26.

The Plaintiff was approved for only eight weeks STD on or around August 28, 2023. Her return date was slated to be October 23,2023; however, the Defendant informed Plaintiff that it did not expect her to return to work with her baby still in the hospital.

27.

On August 29, 2023, twin B was diagnosed with a PVL (brain injury) and BPD (chronic lung disease).

28.

While on leave, the Plaintiff contacted Ms. Carter to inform her one of her twin babies was still hospitalized and inquired about leave under FMLA.

29.

Ms. Carter incorrectly informed the Plaintiff she was not eligible for FMLA because they only employed 20-25 employees, but further informed the Plaintiff her position would be available when she returned.

30.

During her leave, the Plaintiff kept her employer updated on twin B's extended stay in the NICU.

31.

On or around October 9, 2023, the Plaintiff spoke with Ms. Carter, who informed her that she would have to use all her vacation days once her leave was out, in order to be paid.  The thought process being that the hospitalized twin would be out of the hospital by the time the Plaintiff used all of her vacation time and she could return to work.

32.

On or around October 16, 2023, the Plaintiff became aware the Defendant continued to pay co-worker, Holly Dykes, her full paychecks while she was out of work due to her son being in the hospital. The Defendant also took donations to support Ms. Dykes and had raffles to donate the proceeds to Ms. Dykes as well.

33.

Ms. Flint and Ms. Carter were only checking in because they were short-staffed and needed Ms. Carter to return to work at that time.

34.

On October 23, 2023, Ms. Carter contacted the Plaintiff to inform her that because her twelve weeks of STD pay were up and her child was still hospitalized, the Defendant started back her regular pay.

35.

The Plaintiff received eight weeks of STD pay, she was unpaid for four weeks of her leave and was paid by her employer for weeks 13-16 of her leave.

36.

On or around November 2, 2023, the Plaintiff spoke with Ms. Carter to determine if the twins were added to her health insurance, as they were not reflecting on her end.  Ms. Carter also asked for an update on her twin. She informed the Plaintiff that she would need to speak with President, Harold Arnold, to determine if her position would be held, because her FMLA ended as of October 20th and after that date it was at the discretion of the employer.

37.

Ms. Carter further stated that because the Plaintiff had a child in the hospital, Mr. Arnold decided to restart her regular pay, however after the twin's release, they needed to determine if the Plaintiff would return to work. Ms. Carter reiterated that the Plaintiff's position was secure, and they had no intentions of replacing her, even though she previously stated she would have to check with Mr. Arnold to see if her job would be held.  They would allow her two weeks off after the twin's discharge to get settled before returning to work.

38.

On November 6, 2023, twin B was discharged from the hospital.

39.

Plaintiff contacted Mr. Tanner via text regarding insurance for the twins. He informed er that she technically had thirty days from the date of birth to add the twins to insurance. Defendant had not otherwise informed the Plaintiff of this fact.

40.

The Plaintiff returned to work on November 27, 2023. This was the first day she would be away from her twins in seventeen (17) weeks and was suffering from extreme anxiety.

41.

Neither Ms. Miller, Ms. Flint nor Ms. Carter acknowledged the Plaintiff's return. They walked by her desk without looking in her direction. Ms. Carter looked back to say she did not see her sitting there.

42.

Also, that morning, the Plaintiff called her pediatrician for possible aspiration of her twin B, who had been hospitalized. Her pediatrician directed her to bring him in. The Plaintiff asked Ms. Flint if she could take her son to the appointment, and she approved. She also informed Ms. Carter via text. Upon the Plaintiff's return to work, Ms. Flint came by her desk to see what happened with the appointment. The Plaintiff informed her he had an allergic reaction to his formula. Ms. Flint's response was, "oh and that's JUST NOW happening?!, well at least that is all it was."

43.

On November 29, 2023, the Plaintiff reported to work after lunch due to a pre-scheduled appointment.  Ms. Carter said hello to the Plaintiff (this was also the first time she was in the office since the Plaintiff's return to work from leave).  A few moments later, Ms. Carter came back to the Plaintiff's desk to ask her to come in to Ms. Flint's office. Once she was in the office, they informed her they want to discuss

her "attitude" and she was making it hard to work with her, because she was not "engaging." She was written up by Ms. Flint and it was witnessed by Ms. Carter.

44.

That same day, two days after her return from leave, Ms. Flint and Ms. Carter terminated the Plaintiff.

45.

On December 4, 2023, Mr. Tanner contacted the Plaintiff to request an exit interview and to see if he could drop off her separation notice. She declined his offer and requested that he mail the separation notice.

46.

Although Defendant purports to provide a legitimate non-discriminatory reason for the adverse action, this reason is a pretext. Plaintiff was treated less favorably in the terms or conditions of employment than others outside of her protected class, i.e., .   Defendant interfered with Plaintiff's rights under the Pregnancy Discrimination Act and under Title VII of the Civil Rights Act of 1964. They retaliated against her for taking FMLA protected leave in violation of the Family and Medical Leave Act by terminating her employment within two days of returning to work.

47.

Defendant retaliated against Plaintiff for requesting medical leave by terminating her employment as a result of her request for FMLA leave.

48.

Defendant treated employees who had not requested leave for their own or their child's serious health condition better than they treated Plaintiff with regard to the terms or conditions of employment.

49.

Plaintiff was an individual with a disability, as defined by the Americans with Disabilities Act, as amended.

50.

Plaintiff requested a reasonable accommodation of her disabilities.

51.

Specifically, Plaintiff requested leave during the period of her own incapacity.

52.

Defendant terminated Plaintiff because  she had a record of a disability, she was regarded as disabled and because she engaged in protective activity.

53.

But for Plaintiff's disability status and request for accommodations,  she would not have suffered the adverse employment action.

## CLAIMS FOR RELIEF

## COUNT I:  DISABILITY DISCRIMINATION IN VIOLATION OF ADA

54.

Plaintiff re-alleges paragraphs 12-53 as if set forth fully herein.

55.

Plaintiff had a  impairment which substantially limits one or more major life activities including but not limited to moving, lifting, bending, twisting, pushing, pulling, working, and standing.

56.

Plaintiff's  impairment is a "disability" within the meaning of the ADA, as amended.

57.

Defendant was aware of Plaintiff's disability.

58.

Plaintiff has a record of having a disability and/or perceived disability such that < is a person with a disability within the meaning of the ADA, as amended.

59.

At all times relevant to this action, Plaintiff was a qualified individual with a known or perceived disability as defined in the ADA.

60.

Defendant terminated Plaintiff's employment because of her disability, perceived disability, or record of having a disability.

61.

Defendant terminated Plaintiff's employment because of her pregnancy, her requests for accommodation, and her disability in violation of the ADA.

62.

By terminating Plaintiff's employment because of her disability, perceived disability, or record of having a disability, Defendant violated the ADA, as amended.

63.

Although Defendant purports to provide a legitimate non-discriminatory reason for the adverse action, this reason is a pre-text for disability discrimination.

64.

Defendant treated other employees who did not have a disability and/or had not requested accommodations for a disability more favorably than it did Plaintiff with regard to the terms and conditions of employment.

65.

Defendant's actions in subjecting Plaintiff to less favorable terms and conditions of employment constitutes unlawful discrimination on the basis of this violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12111 *et seq.*, 42 U.S.C. 2000e et seq. and 42 U.S.C. section 1981A.

66.

Defendant has willfully and wantonly disregarded Plaintiff's rights, and Defendant's discrimination against Plaintiff was undertaken in bad faith.

67.

The effect of the conduct complained of herein has been to deprive Plaintiff of equal employment opportunity and has otherwise adversely affected her status as an employee because of her disability.

68.

As a direct and proximate result Defendant's violation of the ADA, Plaintiff has been made the victim of acts that have adversely affected her psychological and physical well-being.

69.

As a result of Defendant's discriminatory actions against Plaintiff, < has suffered lost compensation and benefits, emotional distress, inconvenience, humiliation, and other indignities.

70.

Pursuant to the ADA, as amended, Plaintiff is entitled to damages including but not limited to back pay and lost benefits, reinstatement, compensatory damages, equitable relief, attorneys' fees, costs of litigation and all other relief recoverable under the ADA, as amended.

71.

Defendant discriminated against Plaintiff, and, in failing and refusing to take any appropriate remedial action to remedy the unlawful employment practices, has not only deprived Plaintiff of equal employment opportunities, but exhibited malice or reckless indifference to the federally protected rights of Plaintiff.

72.

Plaintiff thus seeks compensatory and punitive damages pursuant to §102(a)(1) of the Civil Rights Act of 1991, 42 U.S.C. § 1981a(b).

## COUNT II:  PREGNANCY DISCRIMINATION IN VIOLATION OF THE PREGNANCY DISCRIMINATION ACT / TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

73.

Plaintiff re-alleges paragraphs 12-53 as if set forth fully herein.

74.

When it adopted the Pregnancy Discrimination Act, Congress amended Title VII to provide that discrimination on the basis of sex includes discrimination "on the basis of pregnancy, childbirth, or related medical conditions."

75.

Defendant's actions in subjecting Plaintiff to less favorable terms and conditions of employment because of her pregnancy constitutes unlawful discrimination on the basis of her sex in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. and 42 U.S.C. § 1981a.

76.

Defendant has willfully and wantonly disregarded Plaintiff's rights, and Defendant's discrimination against Plaintiff was undertaken in bad faith.

77.

The effect of the conduct complained of herein has been to deprive Plaintiff of equal employment opportunity, and has otherwise adversely affected her status as an employee because of her pregnancy.

78.

As a direct and proximate result of Defendant's violation of Title VII, Plaintiff has been made victims of acts that have adversely affected her psychological and physical well-being and have cost her lost wages and benefits.

79.

Accordingly, Defendant is liable for the damages Plaintiff has sustained as a result of Defendant's unlawful discrimination.

## COUNT III: RETALIATION IN VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT

80.

Plaintiff re-alleges paragraphs 12-53 as if set forth fully herein.

81.

Plaintiff requested protected medical leave for her own serious health condition and in order to care for her newborn children while they were suffering from their own serious health condition.

82.

Defendant falsely informed Plaintiff that it was not covered under the FMLA, claiming that it did not have more than fifty employees.

83.

Although it permitted Plaintiff to take medical leave for her serious health condition, Defendant terminated Plaintiff's employment in retaliation for taking such leave two days after her return to work.

84.

Defendant's act in terminating Plaintiff's employment constituted unlawful retaliation in violation of the Family and Medical Leave Act and cost Plaintiff lost wages and benefits.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment as follows:

(a) General damages for mental and emotional suffering caused by Defendant's misconduct;

(b) Punitive damages based on Defendant's willful, malicious, intentional, and deliberate acts, including ratification, condonation and approval of said acts;

(c) Special damages for lost wages and benefits and prejudgment interest thereon;

(d) Liquidated damages for Defendant's willful violation of the FMLA in an amount equal to the lost wages and benefits of which Plaintiff was unlawfully deprived;

(e) Reasonable attorney's fees and expenses of litigation;

(f) Trial by jury as to all issues;

(g) Prejudgment interest at the rate allowed by law;

(h) Declaratory relief to the effect that Defendant has violated Plaintiff's statutory rights;

(i) All equitable relief available under Title VII, the ADA, and/or the FMLA, including injunctive relief of reinstatement, or front pay in lieu thereof, and prohibiting Defendant from further unlawful conduct of the type described herein; and

(j) All other relief to which the Plaintiff may be entitled.

Respectfully submitted this 8th day of October, 2024.

**BARRETT & FARAHANY**

s/ *Matthew C. Billips*
Matthew C. Billips
Georgia Bar No. 057110

*Counsel for Plaintiff Carley McNeal*

P.O. Box 530092
Atlanta, Georgia 30353
(404) 214-0120
matt@justiceatwork.com